IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

|  |  |  |
|---|---|---|
| CHERYL M. BARLOW, as next friend of DAVID MONCEBAIZ, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. G-04-557 |
| JOHN WARREN OWENS, II, ROBERT MCCURLEY, and the CITY OF GALVESTON, | § § § | |
| Defendants. | § § § | |

**ORDER GRANTING DEFENDANTS OWENS' AND MCCURLEY'S MOTION FOR
SUMMARY JUDGMENT**

This case arises out of alleged misconduct by two City of Galveston police officers. Now before the Court is a Motion for Summary Judgment by John Owens and Robert McCurley (collectively, "Defendants"). For the reasons given below, Defendants' Motion for Summary Judgment is **GRANTED**.

I. Background

Cheryl Barlow ("Plaintiff") alleges that Officers John Owens and Robert McCurley entered an apartment without permission or a warrant and arrested David Moncebaiz ("Moncebaiz"), a mentally handicapped 17-year-old who was in the apartment, without probable cause. Plaintiff, Moncebaiz's mother, left Moncebaiz with his father for the weekend. His father in turn left him alone at his uncle's apartment for the day. Neither the father nor the uncle were present during any of the events which followed, and Moncebaiz, despite being a minor and mentally handicapped, had no

1

adult supervision whatsoever.  As the regrettable facts of this case reflect, that had disastrous consequences.

A neighbor called the police to report that a teenage boy had been involved in a confrontation with some children in the street and had been peeking in his windows.  The neighbor, who knew Moncebaiz's uncle but not Moncebaiz, was also concerned because he saw this boy enter the uncle's apartment, and he believed he might be trespassing.  When Defendants arrived, they saw a boy who met the neighbor's description looking out a window of the apartment.  They tried to talk him into coming out, but he refused.  Finally, he stepped just outside the door.  One of the Defendants touched his arm, and Moncebaiz ran back into the apartment.  Defendants followed him and attempted to arrest him.  Moncebaiz put up significant resistance, such that Defendants had to call in another officer.  Defendants hit Moncebaiz in the face, used a "brachial strike," and possibly hit him with a flashlight, although it is not clear whether this was intentional.  Moncebaiz sustained injuries during the arrest (bruises, knots on the head, and cuts) and had to be taken to the hospital.

Plaintiff alleges that the officers used excessive force in arresting Moncebaiz and that the City's failure to train the officers in how to recognize and arrest mentally handicapped people caused the officers' alleged violations of Moncebaiz's rights.  Moncebaiz was not convicted of a crime.

Plaintiff has sued Defendants under 42 U.S.C. § 1983 for violations of the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution and for the state law torts of assault and battery, malicious prosecution, false imprisonment, and intentional infliction of emotional distress. The Court previously dismissed Plaintiff's Eighth Amendment claims and Fourteenth Amendment substantive due process claims against Defendants.

II.  Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552-53, 91 L. Ed. 2d 265 (1986). When one party moves for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S. Ct. at 2512. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *See Anderson,* 477 U.S. at 247-48, 106 S. Ct. at 2510.

Nevertheless, if the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *See Anderson*, 477 U.S. at 255, 106 S. Ct. at 2513.

III. § 1983 Claims

42 U.S.C. § 1983 creates a civil remedy for those who have been deprived of their constitutional rights by a person acting under the color of law. However, state officials may assert an affirmative defense of qualified immunity to such a claim. Defendants assert that they are entitled to qualified immunity because Plaintiff has not shown a violation of a constitutional right and because Defendants' actions were objectively reasonable in light of clearly-established law. *See McKnight v. Johnson*, 277 F.3d 1373 (5th Cir. 2001); *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S. Ct.

3

3034, 3040, 97 L. Ed. 2d 523 (1987).   Although this case presents a genuinely regrettable and unfortunate situation, the Court finds that no genuine issue of material fact exists as to whether Defendants' actions were objectively reasonable given clearly established law.

Each of Defendants' actions in this matter must be considered.   When Defendants saw Moncebaiz in his uncle's apartment, they did not have the power under state law to arrest Moncebaiz without a warrant because the neighbor did not report any behavior constituting a felony, and Defendants had not seen Moncebaiz commit any crime.   *See* Tex. Code Crim. Proc. Ann. art. 14.01 (Vernon 2005).   The Supreme Court has not yet decided whether a warrantless arrest for a misdemeanor not committed in the presence of the arresting officer violates the Fourth Amendment. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 340 n.11, 121 S. Ct. 1536, 1550 n.11, 149 L. Ed. 2d 549 (2001).

Defendants did, however, have the right to stop and detain Moncebaiz for the purpose of investigating the reported criminal behavior because they had reasonable suspicion to believe that a crime had been committed and that Moncebaiz was the person reported by the neighbor.   *See Terry v. Ohio*, 392 U.S. 1, 22, 88 S. Ct. 1868, 1880, 20 L. Ed. 2d 889 (1968).   Therefore, their action in convincing him to come out and talk with them was legal, regardless of whether they had the right to arrest him at that time.   Defendants contend that when Moncebaiz jerked away and ran back inside, he violated Tex. Pen. Code Ann. § 38.03 (Vernon 2003), which makes it a misdemeanor to resist arrest.   Once Moncebaiz committed this crime in their presence, they had the right to pursue him to make a warrantless arrest. *See* Tex. Code Crim. Proc. Ann. art. 14.01 (Vernon 2005); *Lago Vista*, 532 U.S. at 354, 121 S. Ct. at 1557.

Moncebaiz may not have violated § 38.03 because a touch on his arm may not have

4

constituted an arrest. *See U.S. v. Jordan*, 232 F.3d 447, 450 (5th Cir. 2000) (holding that grabbing a suspect's arm and handcuffing him did not necessarily constitute an arrest). The Court need not decide the issue, though, because Tex. Pen. Code Ann. § 38.04 (Vernon 2003) also makes it a misdemeanor to flee from a peace officer who is trying lawfully to *detain* the person.

Defendants reasonably believed that they were arresting or detaining Moncebaiz and that Moncebaiz committed a misdemeanor by resisting. Even if Defendants were mistaken in their belief that they had probable cause to suspect Moncebaiz of a crime, because their belief was reasonable, they are entitled to qualified immunity. *See Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005). Once Defendants believed that Moncebaiz had committed a crime in their presence, they had the clear right under both state and federal law to arrest him without a warrant. Even if they arrested him for the reported misdemeanors not committed in their presence, because the Fourth Amendment law on this point is unsettled, Defendants cannot be held liable under § 1983 for those actions. *See Shultz v. Smith*, 264 F. Supp. 2d 278, 280 (D. Md. 2003) (finding that, based on the comments in *Lago Vista*, police officers have a qualified immunity defense when they make a warrantless arrest for a misdemeanor committed outside their presence). Even assuming that Defendants' act of touching Moncebaiz on the arm constituted a warrantless arrest for a misdemeanor not committed in Defendants' presence, and not merely detention for further questioning, and assuming that this does actually violate the Fourth Amendment, Defendants are still entitled to qualified immunity because this is not *clearly established law. See McKnight*, 277 F.3d at 1373. When Moncebaiz fled back into the house, the attending officers might reasonably apprehend that he was attempting to flee, or that he might be retrieving a weapon of some sort.

Plaintiff next asserts that Defendants used excessive force in effecting the arrest. The

constitutional right to be free from excessive force during detention or arrest is clearly established. *See Tarver*, 410 F.3d at 753-54.  To show that a violation of this right occurred, Plaintiff must show that Moncebaiz suffered an injury "which resulted directly and only from a use of force that was clearly excessive" and that the excessiveness was "clearly unreasonable." *Id.* at 751.  The Parties agree that Moncebaiz put up significant resistance.  The Court does not doubt Plaintiff's contention that Moncebaiz suffered severe cuts and bruises.  However, there is no indication that he suffered more serious injuries like broken bones or internal bleeding that would support a finding of "clearly excessive" force. *See, e.g., Brown v. Long Beach Police Dept.*, 105 Fed. Appx. 549, 550 (5th Cir. 2004) (denying qualified immunity in excessive force case when arrestee's pelvis was broken).  In his resistance, Moncebaiz may have caused as much of the injury as Defendants did.  Plaintiff has not shown that Moncebaiz's injuries resulted *only* from the actions of Defendants and not from his own struggles.  The fact that Moncebaiz not only resisted but did so with considerable enthusiasm makes also Defendants' use of force all the more reasonable. *See, e.g., Gutierrez v. City of San Antonio*, 139 F.3d 441, 447 (5th Cir. 1998).  Plaintiff has not shown that a genuine issue of material fact exists as to whether Defendants used excessive force and whether that force was clearly unreasonable.

Plaintiff's argument that Defendants should have recognized Moncebaiz's mental limitations and therefore treated him differently is especially tenuous.  Police officers are not psychiatrists, and even psychiatrists cannot necessarily distinguish between a mental illness or handicap on one hand and drug-induced or simply obnoxious behavior on the other in a matter of seconds.  Here, Moncebaiz had allegedly threatened children, peered into an unknown party's window, and was acting suspiciously when the police arrived.  Police must make instantaneous decisions to protect themselves and others, and expecting officers to recognize mental problems–even with some training–is

unreasonable.  Here, Defendants observed manifestly strange behavior, and they acted on what they saw.  With the benefit of "20-20" hindsight,  we can see that the behavior was not threatening, but merely the frightened and confused reaction of someone who did not fully understand what was happening.   The Court feels very strongly that the responsibility for that lies squarely with Moncebaiz's family, who knew him and his problems but nonetheless inexplicably and inexcuseably left him alone in an unfamiliar place.  If they had even notified the neighbor of his presence, the neighbor might have understood the situation and not called the police.  Plaintiff cannot blame Defendants because Moncebaiz's father and uncle utterly failed in their responsibility to him.

Although the Court believes that Defendants are entitled to qualified immunity, in part because of the difficult standard a plaintiff must meet to overcome that immunity, the Court does respectfully note two serious systemic apprehensions about this case.  First, the Court has noticed an escalating series of allegations in both the press and the filings in this Court revolving around claims of local police brutality and insensitivity.  The Court certainly cannot decide this case on that basis, but as the local federal tribunal, the Court feels that it is important to bring to the attention of the Galveston Police Department the need for sensitivity and training in these areas.  One reason the Supreme Court refused to find a Fourth Amendment violation in *Lago Vista* was a "dearth of horribles demanding redress."  532 U.S. at 353, 121 S. Ct. at 1557.  Should it become evident that a widespread pattern of abuse of the power to effect warrantless arrests for misdemeanors exists, that would undermine part of the factual basis for the *Lago Vista* decision.  *See Terry*, 392 U.S. at 15, 88 S. Ct. at 1876 ("[C]ourts still retain their traditional responsibility to guard against police conduct which is over-bearing or harassing . . . .").

The Court's second concern is a broader apprehension about the rapidly burgeoning judicial

7

sanction of warrantless searches and seizures. *See, e.g., Lago Vista*, 532 U.S. 318, 121 S. Ct. 1536. This is only the Court's respectful opinion, because the Court understands that unlike the Courts of Appeal or Congress, it is not a policy-making organ. However, the Court wants to note that judicial sanction of searches and seizures based entirely on a perceived need for strict law enforcement, rather than on constitutional principles, is the first step down the slippery slope to a police state, and this is especially true in circumstances of wide apprehensions arising from acts of terror. Precedent is often created by cases in which police have had to deal with obnoxious and genuinely criminal citizens, but by deciding these cases without reference to the broader picture of a generally law-abiding populace deserving of constitutional protection creates an environment in which real abuse can occur. We live in a seriously troubled world, and the easy response to threats of violence and crime is to erode rights in an attempt to find safety. In the end, however, a heavy-handed approach only results in our loss of both.

This case is a good illustration of the Court's concerns. By looking at the events step by step, the Court can trace the chain of legal (or at least arguably legal) behavior by Defendants, and this is all that is required to establish qualified immunity. At first glance, though, it seems absurd that a neighbor's report of some obnoxious but non-violent behavior by a teenage boy would result in such a violent arrest.[1] Defendants have not pointed to any fact showing that they believed Moncebaiz constituted a genuine physical danger to themselves or others, at least until they tried to arrest him.

---

[1] The Supreme Court in *Lago Vista* noted that any arrest is subject to review under the Fourth Amendment when "'conducted in an extraordinary manner.'" 532 U.S. at 353, 121 S. Ct. at 1557 (quoting *Whren v. United States*, 517 U.S. 806, 818, 116 S. Ct. 1769, 1776, 135 L. Ed. 2d 89 (1996)). Whereas the plaintiff in *Lago Vista* was subjected to humiliation but no physical harm, Moncebaiz did suffer physical injuries. The manner of his arrest certainly borders on the extraordinary and deserves greater scrutiny than a non-violent arrest.

8

Moncebaiz retreated to what was, for him, his home–he had nowhere else to go.

A community needs police officers who zealously pursue criminals and suspected criminals. However, those officers should remember that the Constitution is the supreme law of the land; it is their duty to uphold that law as much as it is their duty to uphold laws against trespassing and disturbing the peace.  If they fail to obey the law set forth in the Constitution, they are no better than the criminals they pursue.   The Supreme Court has found the rights contained in the Fourth Amendment to be particularly important.  In *Wolf v. Colorado*, 338 U.S. 25, 27-28, 69 S. Ct. 1359, 1361, 93 L. Ed. 1782 (1949) (emphasis added), Justice Frankfurter wrote for the Court:

> The security of one's privacy against arbitrary intrusion by the police–which is at the core of the Fourth Amendment–is basic to a free society.  It is therefore implicit in 'the concept of ordered liberty' and as such enforceable against the States through the Due Process Clause.  The knock at the door, whether by day or by night, as a prelude to a search, *without authority of law but solely on the authority of the police*, did not need the commentary of recent history to be condemned as inconsistent with the conception of human rights enshrined in the history and the basic constitutional documents of the English-speaking peoples.

The Declaration of Independence proclaims, "That to secure these rights, Governments are instituted among Men, deriving their just powers from the consent of the governed."  The people have consented to be governed only under the conditions set forth in the Constitution.  If the police violate those conditions, then they essentially act *ultra vires*.  Only the law–not the police–determines when a citizen is subject to detention or arrest.  The police are not lawmakers, but enforcers of the law.  One reason why the law makes it more difficult to pursue a tort or constitutional claim against a state official is that we must presume that they are more law-abiding and trustworthy than the people in general.  And yet, as the Supreme Court has pointed out, government officials "possess[] a far greater capacity for harm than an individual trespasser exercising no authority other than his own."  *Bivens*

9

*v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 392, 91 S. Ct. 1999, 2002, 29 L. Ed. 2d 619 (1971).  The public must be able to trust the police to abide by the law and to respect the constitutional rights of all citizens.  The Bill of Rights is no safeguard if the government and its agents choose to ignore it.

Therefore, while the Court finds that Defendants are entitled to qualified immunity on Plaintiff's § 1983 claims, the Court urges Defendants and the Galveston Police Department to give thoughtful consideration to their ever-present obligation to uphold the Constitution and to protect the rights of all citizens.

IV. State Law Claims

The Court previously dismissed Plaintiff's state-law claims against the City.  Defendants now move for summary judgment on Plaintiff's state-law claims against them on the basis of official immunity and Tex. Civ. Prac. & Rem. Code Ann. § 101.106 (Vernon 2005).  However, Plaintiff has not made any state-law claims against Defendants in this case.  In their Motion, Defendants state that Plaintiff filed these claims in state court; the state court dismissed the state-law claims against Defendants; and the case was then removed to this Court.  But this case does not come before the Court on removal, so any claims asserted in a state court action are not before the Court.  Plaintiff filed her Complaint in this Court on September 22, 2004.  Each of the state-law counts begins with, "Defendant, City of Galveston by and through Defendant's agents."  The descriptions of the alleged violations refer to a single Defendant–the City of Galveston.  In contrast, Plaintiff's constitutional claims refer to "defendants," or, more specifically, to "defendants, 'Owens' and 'McCurley.'"  The Court cannot grant Defendants relief against claims not asserted by Plaintiff.  Therefore, Defendants' Motion for Summary Judgment on such claims is **DENIED AS MOOT**.

10

V.  Conclusions

Because Defendants' actions in investigating the neighbor's report, detaining Moncebaiz, and then arresting him were not unreasonable in light of clearly established law, Defendants are entitled to qualified immunity on Plaintiff's § 1983 claims.  Defendants' Motion for Summary Judgment on those issues is hereby **GRANTED**, and Plaintiff's § 1983 claims against Defendants are **DISMISSED WITH PREJUDICE**.  Defendants' Motion for Summary Judgment on Plaintiff's state-law claims is **DENIED AS MOOT** because Plaintiff has asserted no such claims against Defendants.  Each Party is to bear its own taxable costs, expenses, and attorney's fees incurred herein to date.  A Final Judgment addressing these and all other claims will be issued contemporaneously with this Order.

**IT IS SO ORDERED**.

**DONE** this 22nd day of July, 2005, at Galveston, Texas.

Samuel B. Kent
United States District Judge

11